Gary L. LONG, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45A03–8601–CR–10.

Court of Appeals of Indiana,
Third District.

May 14, 1986.

Daniel L. Bella, Appellate Public Defender's Office, Crown Point, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Indianapolis, for appellee (plaintiff below).

STATON, Presiding Judge.

Gary L. Long was convicted by a jury of two counts of Attempted Obstruction of Justice, a Class D felony, and two counts of Intimidation, a Class D felony. The intimidation convictions merged into the Attempted Obstruction of Justice convictions,

and Long was sentenced to three years on each of the latter two counts, to be served consecutively. He raises three issues on appeal:

I.  Was there sufficient evidence to support Long's conviction on Count I, Attempted Obstruction of Justice, and Count II, Intimidation?

II.  Was there sufficient evidence to support Long's conviction on Count III, Attempted Obstruction of Justice, and Count IV, Intimidation?

III.  Did the trial court err in imposing consecutive sentences?

We affirm.

## I.

### Counts I and II·

On April 20, 1985, Debra Morgan went to Long's house. The two had known one another for several months and had dated, although they no longer did so. While Morgan was at Long's house, Long threatened to tie her up in the shack behind his house, and to force her to perform or submit to various forms of deviate sexual conduct. He also told her that if he ever found out that she signed statements or anything else against his brother, Michael, "there would be trouble," and Morgan "would be sorry." Michael Long had been charged in the shooting death of Thelma Worthington.

Long argues that this evidence was insufficient to support his convictions on Count I, Attempted Obstruction of Justice, and Count II, Intimidation. When reviewing a claim of insufficient evidence, we will not reweigh the evidence or judge the credibility of witnesses. Rather, we will look to the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom. If there is sufficient evidence of probative value to support the verdict, we will not disturb it. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 937.

Obstruction of justice is defined at Ind. Code 35–44–3–4, which reads in part:

(a) A person who:

(1) knowingly or intentionally induces, by threat, coercion, or false statement, a witness or informant in an official proceeding or investigation to:

(A) withhold or unreasonably delay in producing any testimony, information, document, or thing;

\*      \*      \*      \*      \*      \*

commits obstruction of justice, a Class D felony.

Indiana Code 35–45–2–1 defines the offense of intimidation. This statute reads, in part:

(a) A person who communicates a threat to another person, with the intent that:

(1) the other person engage in conduct against his will;

\*      \*      \*      \*      \*      \*

commits intimidation, a Class A misdemeanor.

(b) However, the offense is a:

(1) Class D felony if:

(A) the threat is to commit a forcible felony....

The charging informations for Counts I and II alleged that Long threatened Morgan to induce her to withhold testimony against his brother Michael. Long argues that there was no evidence that this was his intent, but rather that his threats were all in reference to Morgan's *signing* something against his brother. Specific intent is a mental state which may be inferred from the surrounding circumstances. *McEachern v. State* (1985), Ind. App., 474 N.E.2d 1034, 1036. Certainly evidence that Long threatened Morgan with Criminal Confinement and Criminal Deviate Conduct if she signed anything against his brother, Michael, supports a reasonable inference that Long intended his threat to prevent Morgan from taking any part in the State's case against his brother, including testifying against him.[1]

---

1.  It is unclear whether Long is challenging the sufficiency of the evidence of his intent to coerce Morgan to withhold testimony or whether he is alleging fatal variance between the charging informations and the proof at trial. Even if he were alleging variance, however, he

Long further argues that Morgan's testimony about the April 20th incident was inherently unreliable. As we have said, we will not judge the credibility of witnesses on appeal. *Harris, supra.* Long points to various factors which he says biased Morgan against him. He also points to the testimony of Kim Green, a prosecution witness, about her conversation with Morgan immediately after the April 20th incident, in which Morgan discussed the sexual threats but, as Green recalled, did not mention Long's brother, Michael. These factors were before the jury, and we will not disturb their judgment as to credibility.

■ Finally, Long argues that the evidence did not support his conviction on Count II for intimidation as a Class D felony, because the threats of forcible felony, criminal confinement, IC 35–42–3–3, and criminal deviate conduct, IC 35–42–4–2, were made wholly apart from his threats regarding his brother's case. Long argues that all he said with regard to Morgan's participation in the criminal case against his brother was that there would be "trouble" and that Morgan would be "sorry." The sexual threats, he argues, are "explained" by the break-up of his relationship with Morgan. We need not determine the reasonableness of this explanation; the evidence supports a reasonable inference that the threats of "trouble" referred to the sexual threats made during the same conversation. We find the evidence sufficient to support Long's conviction on Counts I and II.

## II.

### Counts III and IV

■ On April 24, 1985, Morgan and Kimberly Green went to Long's house to try to retrieve a radio that Long had taken from Morgan. As the two were about to leave Long's house, Long told them that he knew Morgan had signed a statement against his brother regarding the shooting death of Thelma Worthington. Worthington had been shot shortly before she was scheduled to appear in court to testify against Long's brother, Michael, on a prior charge. Long told Morgan that she was going to "end up with plugs in [her] just like Thelma." When Morgan told Long she did not know what he was talking about, Long kicked the door, told her she knew what he meant, and said that even if she didn't it was "over."

Long again challenges the sufficiency of the evidence to support his convictions on Count III, Attempted Obstruction of Justice, and Count IV, Intimidation, for the April 24th incident. He argues that his threat to kill Morgan was made in retribution for her having signed a statement against his brother, Michael, and was not intended to prevent Morgan from testifying against his brother.

If anything, the inference that these statements were intended to keep Morgan from testifying is even stronger than the inference regarding the April 20th statements. The reference to Thelma Worthington, who was shot and killed shortly before she was scheduled to testify against Michael Long, certainly supports a reasonable inference that Gary Long intended Morgan to believe that she could not safely testify against Michael herself. We find the evidence sufficient to support Long's conviction.

## III.

### Consecutive Sentencing

■ The trial court sentenced Long to three years on each count of attempted obstruction of justice, Counts I and III, to run consecutively. The two intimidation convictions merged into these convictions. The trial judge listed among the reasons for the imposition of the sentence the following:

would fail. The test for materiality of such variance is whether the defendant was misled in preparing his defense. *Bates v. State* (1985),

Ind.App., 486 N.E.2d 574. Long makes no showing that he was misled, and we find nothing in the record to indicate that this was so.

The Defendant's prior criminal record is as follows: As a Juvenile, 1980, Bank Burglary and 1981 Attempted Theft.

The Defendant is in need of correctional and rehabilitative treatment that can best be provided by his commitment to a penal facility for the following reasons:

He has not previously had the benefits of prolonged incarceration. Imposition of a reduced sentence, suspension of the sentence and imposition of probation would depreciate the seriousness of the crime in that the victims were threatened with the exact same death suffered by Thelma Worthington for the exact same reason, to prevent testimony against the Defendant's brother, Michael Long.

(Record, at 60–61).

The imposition of criminal sentencing is within the discretion of the trial court. *Stout v. State* (1985), Ind., 479 N.E.2d 563, 568–69. We will not revise a sentence authorized by statute and imposed by the trial court unless it is manifestly unreasonable, so that no reasonable person could find it appropriate to the particular offense and offender for whom it was imposed. *Rhoton v. State* (1985), Ind., 486 N.E.2d 495, 497.

Some factors which a trial court may consider as favoring imposition of consecutive sentences are set out at IC 35–4.1–4–7. The reasons quoted above are among the factors listed in the statute, and they support the imposition of consecutive sentences. We do not find Long's sentence manifestly unreasonable.

Finding no error, we affirm.

HOFFMAN and GARRARD, JJ., concur.